UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE GLOCOMS GROUP, INC., | |
| Plaintiff, | Case No. 17-cv-6854 |
| v. | |
| CENTER FOR PUBLIC INTEGRITY, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Glocoms Group sued Defendant Center for Public Integrity (CPI) after CPI published an article about Glocoms' consulting work for the U.S. government and foreign governments. Glocoms alleges that the article contained false statements that damaged its reputation. In a June 5, 2017 order, this Court granted CPI's motion to dismiss all claims. [47]. Glocoms has since amended its complaint for the third time, [48], and CPI has again moved to dismiss all claims, this time with prejudice [50]. For the reasons explained below, this Court grants CPI's motion.

**I.     Background**

This Court incorporates by reference, and presumes familiarity with, its prior opinion addressing CPI's motion to dismiss Glocoms' complaint, [47], and thus only briefly revisits the facts from which both parties' claims arise.

Glocoms has done consulting work for both U.S. and foreign government agencies since 2000. [48] ¶ 1. CPI publishes news to the general public through its

1

website. *Id.* ¶ 3. In September 2016, CPI published an article about Glocoms entitled: "A Trail of Contracting Fiascos: How a Company Using a Rented Mailbox in Chicago Got Millions of Dollars from International Agencies and the U.S. Government, Despite Official Allegations of Lying and Repeated Sanctions." [48-1] at 32–35. The article reported, among other statements, that the World Bank barred Glocoms in 2010 from working on Bank-funded projects, but that Glocoms still received millions of dollars in contracts from U.S. agencies after being blacklisted by the World Bank. *Id.*

Glocoms contends that the article contains numerous false statements that hurt its "good reputation for honesty and truthfulness" in its industry. *See* [48] ¶ 8 (identifying eight allegedly false statements: 8(a)–(h)). Glocoms also contends that CPI acted recklessly or negligently in publishing the allegedly false statements, and that it had no reasonable grounds for believing them. *Id.* ¶ 9. Glocoms demanded a written retraction from CPI in October 2016, but CPI declined to do so. *Id.* ¶ 16. Glocoms initially sued CPI in September 2017, [1], and Glocoms filed its third amended complaint (TAC) in July 2018, [48].

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also

contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570. This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

When evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Rule 12(b)(6) limits this Court to considering the complaint, documents attached to the complaint, documents central to the complaint (to which the complaint refers), and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

### III. Analysis

Glocoms' TAC alleges claims for common law libel; common law invasion of privacy, or false light; and negligence. [48]. CPI seeks to dismiss Glocoms' claims on the ground that Glocoms fails to plausibly allege: (1) falsity; and (2) that CPI lacked reasonable grounds to believe the truth of the article's statements. [50].

#### A. Statements Previously Dismissed with Prejudice

In its June 5, 2017 order, this Court dismissed with prejudice four of Glocoms' claims, as they were based upon statements that were either protected under the Fair Report Privilege or non-defamatory. [47] at 8–9. Glocoms has since amended its

3

complaint for the third time [48]. Notably, however, Glocoms' TAC includes defamation claims based upon those same statements already dismissed with prejudice. *See* [48] ¶ 8(g) (formerly [33] ¶ 8(i), dismissed with prejudice, [47] at 9), 8(h) (formerly [33] ¶ 8(j), dismissed with prejudice, [47] at 9). The Court thus strikes these claims from Glocoms' TAC.

Moreover, Glocoms' TAC contains claims based upon a statement that is virtually identical to one of the statements previously dismissed with prejudice as non-defamatory. *See* [48] ¶ 8(e) ("For awards below $150,000 – mostly reserved for small firms like Glocoms – officials are not required to update or check databases on performance or to document any concerns."). As noted in this Court's previous order, this statement addresses "the federal government's standards for when contracting officers must consult certain databases or update the databases with information about a contractor's performance," and thus it is not about Glocoms. [47] at 8−9. A statement made about the federal government, rather than Glocoms, could not have defamed Glocoms as a matter of law. *Huon v. Denton*, 841 F.3d 733, 744 (7th Cir. 2016) ("Some comments are not defamatory because they do not directly concern Huon himself, but instead relate to acquittal and guilt more generally."); *Shivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002). Thus, this Court dismisses with prejudice Glocoms' claims based upon statement 8(e).

Given these rulings, this Court focuses on Glocoms' only remaining claims based upon statements 8(a)-8(d) and 8(f).

### B. The Remaining Statements

### 1. Defamation Standard

To state a defamation claim under Illinois law, a plaintiff must allege that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) publication damaged the plaintiff. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009).

For purposes of this case, Glocoms is a private figure rather than a limited purpose public figure. *See* [47] at 12–13. As a private figure, Glocoms need only plead CPI acted negligently for its defamation claims to proceed. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1020 (Ill. 2008). Under this standard, a plaintiff "need only establish that defendant failed to act as a reasonably careful person would act under the same or similar circumstances." *Edwards v. Paddock Publ'ns, Inc.*, 763 N.E.2d 328, 334 (Ill. App. Ct. 2001). In the publishing context, negligence takes the form of publishing a false statement without "reasonable grounds" to believe its truth. *Troman v. Wood*, 340 N.E.2d 292, 299 (Ill. 1975); *see also Edwards v. Paddock Publ'ns, Inc.*, 763 N.E.2d 328, 335 (Ill. App. Ct. 2001) (reversing a directed verdict for a newspaper because evidence indicated that the paper incorrectly published a yearbook photograph of the plaintiff identifying him a suspect in a criminal investigation without verifying that the photograph represented the true suspect). This Court analyzes Glocoms' five allegedly defamatory statements under this standard.

**2. Phone-Answering Service Statement**

First, Glocoms takes issue with the article's statement that its "phone-answering service officers extensions for Anguh, Anyele and Vifansi – and for two others named Mimi Feigenson and Emmanuel Asongwe." [48] ¶ 8(f). CPI also noted that "Anyele and Asongwe could not be reached, Feigenson declined to comment, and LinkedIn profiles for all but Anguh list them as holding different jobs for other firms." *Id*. CPI argues that this is "false and easily explainable," because these individuals "were senior managers in 2010," but that the Article was published "seven (7) years later." *Id*. A common-sense reading suggests that Glocoms is simply agreeing that these individuals no longer work for the company. The law does not require a reporter "to include all facts" that "put the subject in the best light". *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 555 (7th Cir. 2001); *see also Harrison v. Chi. Sun-Times*, 793 N.E.2d 760, 766 (Ill. App. Ct. 2003) (When "the plaintiff's own characterization is not substantially different from the allegedly defamatory language, such language may be deemed substantially true"). Because Glocoms fails to plead any factual basis to suggest this statement was somehow not true or accurate, or that CPI otherwise possessed reasonable grounds to believe it was false, Glocoms' claims based upon statement 8(f) are dismissed with prejudice.

**3. World Bank Statements**

Glocoms' remaining claims take issue with four statements relating to its treatment by the World Bank. Two statements were made to CPI by World Bank officials regarding the institution's views on Glocoms; one statement claims that "the

6

company's consultants didn't always show up and their reports were riddled with errors," and another notes that Glocoms was supposed to send employees to a project, "but instead subcontracted the work to another company." [48] ¶ 8(a)−(b). The other two statements note that the World Bank "debarred" and "blacklisted" Glocoms. *Id.* ¶ 8(c)−(d).

First, Glocoms does not dispute that CPI accurately reported the statements made by World Bank officials to CPI. Instead, it simply disagrees with those officials' views. *See, e.g., id.* ¶ 8(a) ("This is untrue as the contract was satisfactorily completed on time and within budget and the Mongolian Finance Ministry signed-off the deliverables."); *id.* ¶ 8(b) ("Neither the Mongolian Ministry nor the World Bank . . . ever sent a violation notice to Glocoms during the Contract implementation nor sought to cancel the contract before it was complete."). Second, as this Court previously noted in its prior ruling, "Glocoms admits that the World Bank debarred it and that CPI relied upon the World Bank's sources for its article." [47] at 14; [52] at 3. Still, Glocoms' real disagreement appears to still be with the World Bank and the process that the World Bank used to debar and blacklist Glocoms, not CPI. *See, e.g.,* [48] ¶ 14 (alleging the World Bank conducted a "sham audit"); *id.* ¶ 39 (claiming that because the World Bank's debarment took place in 2008, and the audit was completed in 2010, "the verdict was given before the trial.").

Moreover, Glocoms still fails to allege a factual basis for its position that CPI lacked "reasonable grounds" to believe the truth of the article's statements when it

7

relied upon World Bank documents and officials in its reporting.[1] *See Troman*, 340 N.E.2d at 299. Instead, Glocoms merely restates its conclusory allegations that CPI published the allegedly defamatory statements "in full knowledge that they were untrue" and failed "to fully investigate," [48] ¶8, providing no supporting facts that raise a reasonable inference of negligence.

For example, Glocoms claims that no "other sources are presented in the Article apart from contact with World Bank staff about the World Bank's debarment. *Id*. ¶ 45. First, Glocoms fails to provide any factual basis for its claim that relying on the official public documents and statements of the World Bank for information on their own internal operations and debarment process somehow constitutes negligence.[2] Moreover, Glocoms ignores the fact that the article itself clearly lists a variety of other sources upon which CPI relied. In addition to official World Bank documents, the article expressly references statements from Hasnain, [48-1] at 32; World Bank spokesperson David Theis and World Bank counsel Frank Fariello, *id*. at 33, 34; United Nations Development Programme spokesperson Dylan Lowthian,

---

[1] Glocoms argues that CPI cannot reference World Bank documents when arguing its reporting was not negligent, as this Court previously found that Illinois' fair report privilege does not encompass reports of World Bank proceedings. [47] at 6−8; [52] at 8. But while the World Bank reports are not privileged fair reports, this does not make them, by default, unreasonable documents to rely upon for the issues for which CPI used them; among other things, the reports are still relevant in determining whether CPI lacked reasonable grounds to believe the truth of the article's statements.

[2] To support its claim that the World Bank is "extremely corrupt," Glocoms cites a proposed piece of legislation that encourages the Bank to focus its lending on stopping extremist violence, among other issues. [48] ¶ 8(d); [48-1] 18−31. But rather than suggest that the World Bank is overzealous or unfair towards companies like Glocoms in its debarment processes, the proposed legislation contains provisions calling on the World Bank to conduct *more* audits of projects like that which led to Glocoms' debarment. [48-1] at 18 § 2(b)(2)(C). It encourages increased measures to decrease corruption in the Bank's projects, not corruption in the Bank's debarment processes.

8

*id.* at 33; Millennium Challenge Corporation spokespersons Laura Allen and Renee Kelly, *id.* at 33–34; the U.S. Fish and Wildlife Service's spokesperson Ryan Moehring, *id.* at 34; and U.S. Army contracting officer Steven Bailey, *id.*, among others. Glocoms offers no factual basis for its position that CPI lacked "reasonable grounds" to believe the truth of the article's statements based upon these various sources.[3]

**4. Glocoms' Additional Negligence Arguments**

Glocoms also claims that CPI was negligent in failing to further investigate and report that "neither Vietnam nor Mongolia cancelled the contract[s] or gave notice of breach." [52] at 7. But the article does not claim that the Vietnamese contract was canceled, nor does it state which specific entity canceled the Mongolian contract. Instead, the article merely states that the Mongolia contract was terminated according to the World Bank's debarment notice and links to the notice itself. [48-1] at 32. CPI simply provided an accurate report that the World Bank issued a debarment notice against Glocoms based upon its performance; the law does not require CPI to frame every detail in the best light for Glocoms. *See Wilkow*, 241 F.3d at 555. Once again, Glocoms fails to provide facts that raise a reasonable inference of negligence.

Finally, Glocoms repeats its allegation that CPI acted negligently by allowing a graduate student and several undergraduate students to write the article, [48] ¶

---

[3] Glocoms also points to two news articles to support its claim that the World Bank is a "corrupt an[d] inept organization." [48] ¶ 39 n.1. But Glocoms has offered no factual support as to why these articles' general claims about corruption in the World Bank should have made CPI doubt the information it received from the World Bank itself about its own debarment processes. Indeed, one three-paragraph article merely recommends watching interviews conducted by a former senior counsel to the World Bank; the other calls for increased measures to decrease corruption in the Bank's projects, not corruption in the Bank's debarment processes. *Id.*

39, but offers only general allegations that because often, the "main focus of students is to graduate or to receive credit" and "[m]ore often than not, they are not paid," student reporters' "due diligence" can be diminished. *Id.* ¶ 47. Again, Glocoms offers no facts to suggest that CPI actually fell below the ordinary standard of care in publishing by using student reporters for this article. *See Edwards*, 763 N.E.2d at 334.

### 5. Glocoms' Claims for Defamation, False Light, and Negligence Fail

Because Glocoms fails to plead any new factual bases for its position that CPI acted negligently or lacked "reasonable grounds" to believe the truth of the article's statements, Glocoms' claims based upon statements 8(a)–(d) are dismissed with prejudice. And, because Glocoms' defamation claim fails due to its failure to plead that CPI acted negligently, Glocoms' related claims for negligence and false light also fail, as they concern the same allegedly defamatory statements. *See Huon*, 841 F.3d at 745 (citing *Madison v. Frazier*, 539 F.3d 646 (7th Cir. 2008) (When an unsuccessful defamation per se claim forms "the basis of a plaintiff's false-light claim, his false-light invasion of privacy claim fails as well.")); [47] at 14. Thus, this Court dismisses the remaining portion of Plaintiff's complaint with prejudice.

## IV. Conclusion

As set forth above, this Court grants CPI's motion to dismiss with prejudice [50]. All dates and deadlines are stricken. Civil case terminated.

Dated: September 25, 2018

Entered:

_____
John Robert Blakey
United States District Judge